UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

DAVID C. CROWE                                                                                    PETITIONER

v.                                                         CIVIL ACTION NO. 4:15-CV-122-CRS
                                                           CRIMINAL ACTION NO. 4:95-CR-13-CRS

STACEY MARTIN
U.S. Probation Officer                                                                           RESPONDENT

## MEMORANDUM OPINION

This matter is before the court for consideration of the Findings of Fact, Conclusions of Law, and Recommendation of the United States Magistrate Judge (hereinafter, "Report") in this action brought under 28 U.S.C. § 2241, and objections filed thereto.

The petitioner, David C. Crowe, proceeding *pro se*, requests that this court vacate certain counts of conviction for money laundering, contending that, due to the United States Supreme Court decision in *United States v. Santos*, 553 U.S. 507, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008), he is actually innocent of those charges. The magistrate judge noted that both David and Martha Crowe, his wife, have argued for the same result under the *Santos* case.

On August 21, 1996, a jury convicted the defendants, David and Martha Crowe, and their company, Gold Unlimited, Inc., of mail fraud (counts one through seven), money laundering conspiracy (count fifteen), and money laundering (counts sixteen through twenty two), and it acquitted the defendants of the securities violations (counts eight through fourteen). *United States v. Gold Unlimited, Inc.,* 177 F.3d 472, 477 (6th Cir. 1999).

The defendants were sentenced, and David and Martha Crowe were released on bond pending their date for voluntary surrender to begin service of their sentences. They failed to surrender. Instead, they fled the country. They were re-arrested in July, 2001 and returned to Kentucky. They were indicted and subsequently pled guilty to a charge of failure to appear for which they were sentenced to serve additional time.

The proceedings against the Crowes concerning their failure to appear have no relevance to this habeas petition, except to the extent that the Crowes' decision to flee resulted in the 1997 dismissal of their direct appeals of their convictions under the fugitive entitlement doctrine. *Id.* at 478. By fleeing the jurisdiction, the Crowes forfeited their right to challenge any aspect of the trial proceedings on direct appeal. The Crowes' corporate entity, Gold Unlimited, pursued an appeal which was unsuccessful. This court thus cites to the Court of Appeals decision affirming the convictions.

This matter came before this court for consideration of the petition of Martha Crowe for a writ of habeas corpus pursuant to 28 U.S.C. § 2241[1] seeking to have her convictions for money laundering vacated under the authority of *United States v. Santos*, 553 U.S. 507 (2008).[2] In 2010, she filed the petition in the United States District Court for the Northern District of Texas,

---

[1] Martha Crowe also filed a number of other petitions for collateral relief which are not pertinent here.
[2] *Crowe v. Keffer*, 4:11CV-89-CRS, DN 1.

the district of her incarceration. While the matter remained pending, Crowe completed her term of imprisonment and was released from custody. The matter was then transferred to the Western District of Kentucky, "the convicting court, which maintains jurisdiction over [Crowe's] term of supervised release and in whose jurisdiction [Crowe] resides."[3]

Martha Crowe sought retransfer of her petition to the Texas court. The presiding judge, Joseph H. McKinley, Jr., denied the motion to re-transfer. He subsequently granted Crowe's motions for recusal and to vacate the denial of the motion for re-transfer. This matter was thereafter reassigned to the undersigned, and the motion for re-transfer was subsequently denied a second time.

The parties then filed supplemental memoranda addressing the relevant Sixth Circuit law relating to her petition. The matter was then submitted for decision.

This court exhaustively addressed the matter of whether there was a basis for vacating Martha Crowe's money laundering convictions, ultimately determining that there was not, and denied her petition for relief.[4] This same issue is now raised by David Crowe in the present petition. The court referred David Crowe's § 2241 petition to the magistrate judge for review and for preparation of findings of fact, conclusions of law, and recommendation as to its disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge issued a thorough and articulate Report, recommending that the petition be denied.[5]

---

[3] N. D. Tex. Civil Action No. 4:10CV-579, DN 19.
[4] *Crowe v. Keffer*, Civil Case No. 4:11CV-89-CRS, DN 75.
[5]

At the outset, a brief recitation of the history of David Crowe's collateral challenges to his conviction is in order. The magistrate judge has set out most of the pertinent events in the timeline in his Report.

David Crowe filed a § 2255 petition for writ of habeas corpus and an amended petition in this court which were denied. He then filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Southern District of Georgia in August of 2010, the jurisdiction of his incarceration. He argued in that petition that he satisfied the "savings clause" of § 2255(e) which allows a person to challenge the legality of a conviction or sentence under § 2241. The Southern District of Georgia found his petition wanting, finding that he failed to show, under *Skilling, Black,* or *Santos*,[6] that he was "convicted of a non-existent offense." Thus he did not satisfy the requirements of § 2255's "savings clause." With regard to application of the *Santos* case, the court stated[7] that

> …Crowe's reliance on *United States v. Santos*, 553 U.S. 507 (2008) is misplaced. The Eleventh Circuit Court of Appeals has determined that the *Santos* decision is of "limited precedential value" and its holding is limited to "the gross receipts of an unlicensed gambling operation…As Crowe was convicted of money laundering and conspiracy to money launder the proceeds of an illegal pyramid scheme, *Santos* does not reveal Crowe was convicted of a non-existent offense.

Here, Crowe asserts the same argument. He argues to this court in the present § 2241 petition that in light of *Santos*, he can demonstrate his "actual innocence," that is, factual innocence of the money laundering counts, thus meeting the requirements for application of the "savings clause," as articulated in this Circuit. In *Wooten v. Cauley*, 677 F.3d 303, 306-307 (6th

---

[6] *Skilling v. United States*, 130 S.Ct. 2896 (2010), *Black v. United States*, 130 S.Ct. 2963 (2010), and *United States v. Santos*, 553 U.S. 507(2008).
[7] *Crowe v. Haynes*, Civil Action No. 2:10CV-130-LGW-JEG, DN 11, p. 3.

Cir. 2012), the Sixth Circuit stated that a petitioner must demonstrate "actual innocence" which is not cognizable in a second or successive § 2255 motion in order to invoke the "savings clause." The Court of Appeals noted that "actual innocence" means factual innocence, not mere legal insufficiency, and indicated that one way to establish factual innocence would be to show an intervening change in the law that establishes the petitioner's actual innocence. *Wooten*, 677 F.3d at 307-308. As he did in the Southern District of Georgia, Crowe focuses the court on the purported effect of the *Santos* decision on the money laundering counts of conviction to justify his claim for relief under § 2241.

After the Southern District of Georgia found that *Skilling, Black*, and *Santos* failed to support his contention that he satisfied the "savings clause" of § 2255(e) to seek relief under § 2241, Crowe appealed to the United States Court of Appeals for the Eleventh Circuit. He later abandoned that appeal. Thereafter, when Martha Crowe had some success with her § 2241 petition, albeit temporary success, David Crowe filed a § 2255 motion in the Western District of Kentucky seeking relief similar to that of his wife. The motion was transferred to the United States Court of Appeals for the Sixth Circuit for permission to file a second or successive petition. The Sixth Circuit denied authorization to file a second or successive § 2255, noting among other things, that "there is no authority for the proposition that a vacated judgment in a co-defendant's case provides stand-alone grounds to vacate judgments of other co-defendants." In deciding the issue, the Court of Appeals found that David Crowe was necessarily relying on *Santos*, as *Santos* formed the basis for the district court's ruling as to Martha Crowe's petition. The Court of Appeals concluded that *Santos* did not justify authorization to file a second or

successive § 2255 petition, and stated that it "express[ed] no view on Crowe's § 2241 motion in the Southern District of Georgia."[8]

Again unsuccessful, David Crowe sought to alter, amend or vacate the Georgia judgment denying his § 2241 there on the ground that the Western District of Kentucky's ruling on Martha Crowe's petition constituted an intervening decision entitling him to similar relief. His motion was denied by the Southern District of Georgia which stated that Crowe had already been made aware that *Santos* did not provide him with his requested relief, and that any contrary finding with respect to Martha Crowe in the Western District of Kentucky was not binding authority for the Southern District of Georgia.[9]

Before the Southern District of Georgia had ruled on Crowe's rule 60(b)(6) motion to alter, amend, or vacate, Crowe filed a motion to stay or transfer the case to the Western District of Kentucky, urging that transfer was warranted because Martha Crowe had received different treatment in the Western District of Kentucky.[10] That motion to stay or transfer was denied by the Southern District of Georgia. Final judgment denying David Crowe relief and dismissing his § 2241 petition was entered by the Southern District of Georgia on June 2, 2014.

On August 25, 2014, this court entered a Superseding Memorandum Opinion, Order, and Judgment denying Martha Crowe relief and dismissing her § 2241 petition here in the Western District of Kentucky. In September 2015, David Crowe filed the present § 2241 petition in this district urging identical arguments which were (1) made by his wife and ultimately rejected by this court over one year ago and (2) made in his prior § 2241 and rejected by the Southern District of Georgia.

---

[8] *Crowe v. Martin,* Civil Action No. 3:15CV-122-CRS-HBB, DN 7, pp. 5-6.
[9] *Crowe*, 10CV-130, DN 35, p. 3.
[10] *Crowe*, 10CV-130, DN 34, p. 4.

David Crowe has sought § 2241 relief in various forums and under various procedures. The United States noted in its response to Crowe's petition that a prior § 2241 petition raising the same challenges had been adjudicated in the Southern District of Georgia. The United States quoted from the Southern District of Georgia's decision wherein the court determined that 11th Circuit precedent interpreted *Santos* as limited to its facts, and thus *Santos* "does not reveal [that] Crowe was convicted of a non-existent offense."[11] The United States then argued that, for the reasons articulated by this court with respect to Martha Crowe's § 2241 petition, David Crowe cannot establish "actual innocence," and his current petition for § 2241 relief must be denied.

"Principles of federal comity and judicial economy permit a court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district…In the context of petitions for habeas corpus, these concerns are reflected in the 'abuse of the writ' doctrine which prohibits petitioners from filing subsequent petitions for habeas corpus where an earlier petition has already been denied." *O'Neal v. Levi*, 551 F.Supp.2d 379, 387 (E.D.Pa. 2008), *quoting Abdel-Whab v. Ridge*, No. 04-5386, Civ.A. 05-59, 2005 WL 551352, *3 (E.D.Pa. March 3, 2005), *affm'd,* 132 Fed.Appx. 988 (3d Cir. 2005). In the context of § 2241 petitions, "the pre-AEDPA doctrines concerning abusive or successive petitions still apply," and such a habeas petition "should be considered in the context of *McCleskey [v. Zant*, 111 S.Ct. 1454], with "the caveat that application of *McCleskey* to [the] petition should be expected to yield a resolution in harmony with AEDPA." *Zayas v. INS*, 311 F.3d 247, 257 (3d Cir. 2002); *see also, Blue Thunder v. U.S. Parole Commission*, No. 13-187-KSF, 2013 WL 6061824 (E.D.Ky. Nov. 18, 2013)(citing *McCleskey* and *Zayas*, dismissing § 2241 petition).

---

[11] *Crowe*, 10CV-130, DN 5, p. 4.

In *O'Neal v. Levi*, the United States urged that O'Neal's § 2241 petition in the Eastern District of Pennsylvania should be dismissed as "second or successive" under the "abuse of the writ" doctrine, noting that, "[d]issatisfied with the outcome in 2005 of his first Section 2241 petition filed in the [Eastern] District of North Carolina, [O'Neal] now turn[s] to another district court in another circuit to renew essentially the same arguments posed before in this first petition." 551 F.Supp.2d at 385. The court concluded that this second "petition 'raises no new claims beyond those which have already been considered and dismissed' by the Eastern District of North Carolina, whether or not this Court would rule differently on O'Neal's claims than the District Court in North Carolina ruled is of no matter, and 'controlling weight' should be given to the judgment of that Court. *See, e.g. Abdel-Whab*, 2005 WL 551352, at *3; *see McCleskey*, 499 U.S. at 482, 111 S.Ct. 1454." *Id.* at 392.

In this case, in response to the petition, the United States particularly described Crowe's prior writ history and identified the claim which is being asserted again in this second § 2241 petition. However, the United States did not seek dismissal under the abuse of the writ doctrine, as it might have successfully done. Rather, it urges that David Crowe cannot establish "actual innocence" within the contours of § 2255(e) and thus he is not entitled to relief under § 2241.

The court has reviewed the record and the magistrate judge's Report which carefully and articulately analyzes Crowe's "actual innocence" argument. This court concludes that Crowe's objections to the magistrate judge's Report are without merit, that habeas relief must be denied, and the § 2241 petition must be dismissed for the reasons stated in the magistrate judge's Report.

We address herein two recent filings of David Crowe in this case: his objections[12] to the magistrate judge's Report (DN 8), and his response to the United States' response to Crowe's § 2241 petition (DN 10).[13]

Crowe's response to the United States' response to the petition consists of three pages of explanation why, in David Crowe's view, his wife was a "victim" in this case and should not have been charged. As this narrative is wholly unrelated to David Crowe's § 2241 petition, it affords him no relief.[14]

Crowe's objections to the magistrate judge's Report (DN 8) are similarly unremarkable. The first 7 ½ pages discuss matters unrelated to the Report in issue. Crowe continues to discuss matters relating to his wife's case; matters which are not presently before the court. As such, there is nothing for the court to address with respect to that portion of his brief.

In the portion of his brief which actually addresses the magistrate judge's findings and conclusions (DN 8, pp. 8-13), Crowe argues nothing new.

First, he challenges the statement in the findings of fact that

> Eager participants seeking galactic profits flocked to this advertised 'Get Rich Quick' program. Id. However, only Gold and the Crowes quickly got rich, so authorities intervened. Id.

(DN 7, p. 2).

---

[12] Styled "Response to Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation."
[13] In his objections to the magistrate judge's Report, Crowe indicated that he had not received a copy of the United States' response to his petition. Apparently, he now has it.
[14] In both the response (DN 10) and objections (DN 8), David Crowe notes a "history of the court granting and rubber stamping whatever comes out of the United States Attorney's office" ((DN 10, p. 1) and the court and prosecutor's "obvious violations" of Martha Crowe's rights in her case (DN 8, p. 7), and seeks the appointment of an attorney. Such argument fails to state legal grounds for appointment of counsel.

The magistrate judge's statements were taken from *United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 475 (6th Cir. 1999), the Court of Appeals decision affirming the convictions in this case. This "finding" is for descriptive purposes only in the magistrate judge's Report. It has no bearing on the *Santos* analysis which is Crowe's ground for his "actual innocence" argument.

Second, Crowe challenges the finding that

> The United States established that $17,000,000 more went into the account as deposits than was paid out as expenses of running the scheme. This sum was, in fact, profit, as defined by *Santos*, that is, what remained from the gross receipts after subtraction of the sums paid out to investors as "returns," in furtherance of the Pyramid scheme.
>
> (DN 7, p. 19).

Crowe objects to this finding, urging that because the United States shut down the Gold Unlimited operation, seized cash, and froze the accounts, "the Prosecutors chose to make 'victims' of all those [Distributors and their customers] by removing their payments from their orders and depositing them in the bank." (DN 8, p. 10). He claims that the United States "fraudulently paid to the Government and the state of Kentucky $3.1 million dollars [attached] in the form of income tax." (DN 8, p. 11). He concludes that "this $17,000,000 figure was created by the Government Prosecutors causing the commission checks to bounce and removing the payments of over 3 weeks from unprocessed orders and putting it in the bank. The sum of $17,000,000 was in fact <u>not profit</u>." (Dn 8, p. 11). Crowe supports this argument with nothing more than urging that the court look at the financial records in this case for itself. He does not take issue with any of the legal analysis of the *Santos* decision or its progeny or the application of that authority to this case. He offers no basis for this court to go behind the verdicts or the Court of Appeals' decision affirming them.

The magistrate judge explained that

> [T]he indictment against Mr. Crowe charges laundering of $15,035,298.19 in deposit transactions occurring in February and March of 1995 immediately before the scheme was shut down. The United States proved at trial that 96,000 participants had paid $43,000,000.00 to Gold over the course of the scheme, and Gold had disbursed $25,000,000.00 in commissions by March of 1995. *United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 477 (6th Cir. 1999). Thus, the laundered sums charged in the indictment were profits, as they were nearly the sum that remained at the end of the scheme, after accounting for the payouts of commissions to investors.

(Dn 7, p. 19).

Nothing in Crowe's discourse on this point casts doubt upon the evidence of the income and disbursements, as recited by the Court of Appeals in *Gold Unlimited*, 177 F.3d at 477. He simply urges that the United States created a fiction and that "after all was said and done, the company may have had a taxable profit of around $200,000." (DN 8, p. 11).

Crowe's third and final objection is to the statement

> Thus, the events giving rise to any *Santos* claim – the statute and indictment in this case – were apparent before Crowe was convicted.

(DN 8, p. 11).

Crowe states that "[t]his is the first time during the Petitioner, his wife, or Gold Unlimited's case, that a judge has made such an arrogant statement from all the District and Circuit Courts that have been involved!" (DN 8, p. 11). In essence, he contends that he could not have discerned the purported *Santos* problem himself and he was disadvantaged by the court's failure to release sufficient funds "to hire expert legal representation that might have had the knowledge to bring up what the Santos attorneys did in 2007." (DN 8, p. 11).

11

The problem with Crowe's objection is that it challenges a quotation from the *Gold Unlimited* Court of Appeals opinion in which Crowe was denied the opportunity to pursue a second or successive § 2255 petition. Thus Crowe is not, in fact, objecting to any finding or conclusion of the magistrate judge in his Report, but rather to a quotation from a published Court of Appeals decision cited only for purposes of recounting the procedural history of the case. This finding and the resulting denial of the second or successive § 2255 has nothing to do with the analysis of the merits of the *Santos* argument, the matter about which the magistrate judge wrote extensively in his Report and upon which he recommended denial of the petition.

The objections of David Crowe to the magistrate judge's Report are without merit. Therefore, the magistrate judge's Findings of Fact, Conclusions of Law, and Recommendation that habeas relief be denied and the § 2241 petition be dismissed will be accepted and adopted in its entirety.

Finally, the magistrate judge concluded that that a Certificate of Appealability should issue in this case, finding that, among the circuits, there are varying interpretations of the plurality opinion (Justice Stevens' concurrence) in the *Santos* case which could lead reasonable jurists to reach different conclusions regarding whether Crowe has met his burden to establish "actual innocence" of the money laundering counts of conviction. (DN 7, pp. 22-23). This court disagrees and will reject the magistrate judge's recommendation that a Certificate of Appealability issue.

There are clearly analytical differences among the circuits which have looked at the issue over the *meaning* of the *Santos* plurality opinion. However, in this court's view, reasonable jurists would not differ as to this court's conclusion that the facts of this case are most similar to,

and thus should be governed by, the analysis in the case of *United States v. Van Alstyne*, 584 F.3d 803, 815 (9th Cir. 2009). The Ninth Circuit reached a well-reasoned result, applying the *Santos* principles to the facts of the case before it. This court is unpersuaded that the clarity of the analysis in the case at hand under the authority of *Van Alstyne* can be called into question by other decisions applying *Santos* in dissimilar circumstances. A Certificate of Appealability will therefore be denied.

A separate order and judgment will be entered in this case in accordance with this opinion.

April 25, 2016

**IT IS SO ORDERED.**

**Charles R. Simpson III, Senior Judge**
**United States District Court**

cc:  Counsel of Record
     David C. Crowe, *pro se*

13